UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TYRONE HULL,

        Plaintiff,

            v.                          CAUSE NO. 3:20-CV-713-JD-MGG

JOHN GALIPEAU, et al.,

        Defendants.

## OPINION AND ORDER

Tyrone Hull, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983, alleging his mental health care at Westville Correctional Facility is constitutionally deficient. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Hull alleges that he suffers from multiple mental health diagnosis, including hearing voices, severe paranoia, depression, severe mood swings, bi-polar, anxiety, and PTSD. ECF 1 at ¶ 17. For the past five years, he had been taking psychotropic medication as well as medication for high blood pressure and severe headaches. *Id.* at ¶¶ 17-18; ECF 1-1 at 35.

On August 20, 2019, Hull received a conduct report for C-344, misuse of medication. ECF 1 at ¶ 19; ECF 1-1 at 42. The next day his medication was cut off. ECF 1 at ¶ 19. When he saw Dr. Barbara Eichman doing her rounds that day, she told him that she was taking him off his meds to punish him for the conduct report. *Id*. at ¶ 20. His medical records reflect that as of September 8, 2019, he remained only on his blood pressure medication, though Hull disputes that he was even given those. ECF 1-1 at 36. Hull contends that instead of having his medication abruptly stopped, he should have had his meds crushed when given to him, which is a technique used to prevent hoarding. ECF 1 at ¶ 21.

On September 18, 2019, Michelle Boren conducted a one-on-one assessment with Hull. ECF 1 at ¶ 22; ECF 1-1 at 17. She is the therapist assigned to his pod and decides when to refer an inmate to Dr. Eichman, who can prescribe medication. ECF 1 at ¶ 22; ECF 1-1 at 25, 29. After this meeting, Hull refused to meet with her one-on-one again because he believed that she shared private information about him with a correctional officer. ECF 1 at ¶ 23. He refused one-on-one appointments with her on October 10, 2019; November, 8, 2019; December 10, 2019; January 10, 2020; February 11, 2020; March 9, 2020; and March 20, 2020. ECF 1-1 at 20. Nevertheless, whenever Boren would do her rounds on the pod, Hull would tell her that he needed his psych meds back, he was suffering from serious side effects, and he had severe headaches. ECF 1 at ¶ 24.

On March 24, 2020, Hull submitted a request for healthcare complaining about having panic attacks, major mood swings, hearing voices, and suffering from severe

headaches. ECF 1-1 at 23. He was scheduled for an out-of-cell session with Boren on March 31, 2020, but he refused it. *Id.* at 23.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Hull states a claim against Dr. Eichman and Boren. Hoarding medication can be a legitimate reason to discontinue medication, if otherwise medically appropriate. But here, Hull alleges Dr. Eichman discontinued the medication as a punishment for the

August 20, 2019, conduct report and not as an exercise of professional judgment. Similarly, Hull saw Boren in a one-on-one session on September 18, 2019, after his medication was cut off. The decision not to refer him to Dr. Eichman after that meeting could be deliberate indifference. However, once Hull started refusing his one-on-one sessions, neither defendant could be deliberately indifferent to his medical needs. His refusal to participate in treatment cuts off their liability. *See Cherry v. Berge*, 98 F. App'x 513, 515 (7th Cir. 2004) (holding that defendants were not deliberately indifferent for withholding medication because prisoner's noncompliance with medication protocol was considered a refusal). He cannot justify his refusal based on his desire for a different therapist. "The Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing." *United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985).

Hull does not state a claim against J. Harvil, a nonmedical grievance officer. To the extent that Hull is suing him for his role in processing his grievances, he cannot state a claim. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Moreover, the exhibits show that Harvil responded to Hull's grievance: "Per medical documentation, your medications were discontinued due to your misuse and hoarding. You have chosen not to meet with your assigned

4

therapist, which has prevented the evaluation that is necessary for proper treatment."

ECF 1-1 at 49.

> [I]f a prisoner is under the care of medical experts ... a non-medical prison
> official will generally be justified in believing that the prisoner is in
> capable hands. This follows naturally from the division of labor within a
> prison. Inmate health and safety is promoted by dividing responsibility
> for various aspects of inmate life among guards, administrators,
> physicians, and so on. Holding a non-medical prison official liable in a
> case where a prisoner was under a physician's care would strain this
> division of labor.

*Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218,

236 (3d Cir.2004)). Harvil ensured that Hull was under the care of medical officials.

Hull does not state a claim against Monica Wala, whose involvement was limited

to processing his healthcare requests. The exhibits attached to Hull's complaint show

that Wala did not ignore any of his requests. She refused to assign him another mental

health counselor, ECF 1-1 at 20, 21, 22, 29, but she scheduled an appointment for him to

be seen when he complained of major side effects, *id.* at 30.

In the same vein, the complaint does not state a claim against J. Galipeau, the

Warden, or Dorothy Livers, a Health Care Service Administrator. The complaint states

that Hull sent Galipeau an informal grievance dated March 25, 2020, and Galipeau

forwarded it to Livers. ECF 1 at ¶¶ 12, 30. Galipeau is entitled to rely on medical staff's

expertise in resolving grievances. The record shows that Livers reviewed Hull's medical

records and found that Dr. Eichman had discontinued his meds because he was found

hoarding them in his cell. This response does not constitute deliberate indifference,

particularly in light of Hull's continued noncompliance at this point.

Hull does not state a claim against Wexford of Indiana, LLC, the private company that employs medical staff at Westville. A private company may be held liable for constitutional violations when it performs a state function. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). However, the company cannot be held liable under § 1983 just because its employees commit unconstitutional acts; the company itself must have unconstitutional policies or practices. *See J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020); *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). The general statements Hull makes about alleged unlawful policies are not detailed enough to plausibly allege that Wexford has an official policy of providing inadequate medical care to inmates. Rather, his complaint describes individual failings by the medical professionals who have been involved in his care.

For these reasons, the court:

(1) GRANTS Tyrone Hull leave to proceed against Dr. Barbara Eichman in her individual capacity for compensatory and punitive damages for discontinuing his medication for the period of August 21, 2019, through October 10, 2019, in violation of the Eighth Amendment;

(2) GRANTS Tyrone Hull leave to proceed against Michelle Boren in her individual capacity for compensatory and punitive damages for providing constitutionally inadequate medical care between September 18, 2019, and October 10, 2019, in violation of the Eighth Amendment;

(3) DISMISSES John Galipeau, Wexford of Indiana, LLC, Monica Wala, J. Harvil, and Dorothy Livers;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Dr. Barbara Eichman and Michelle Boren at Wexford of Indiana, LLC, and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS Wexford of Indiana, LLC, to provide the United States Marshals Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of Dr. Barbara Eichman and Michelle Boren, if either of them does not waive service and if it has such information; and

(7) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Dr. Barbara Eichman and Michelle Boren to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 16, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT